**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **DENNIS TROYER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:16-cv-00146-RL-SLC** |
| | ) | |
| **THOMAS HENEGHAN,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

On July 8, 2016, Defendant National Futures Association ("NFA") filed a motion to

transfer this suit advancing violations of the Commodity Exchange Act ("CEA") to the Northern

District of Illinois, the district in which NFA maintains its principal place of business.  (DE 4).

Plaintiff Dennis Troyer filed a brief in opposition to the motion on July 21, 2016 (DE 5), and

NFA replied on August 4, 2016 (DE 6).  At the time these briefs were filed, Troyer had yet to

serve Defendants Thomas Heneghan, Olivier Livolsi, and Portfolio Managers, Inc. ("PMI").

Troyer has now served PMI (DE 10) and has voluntarily dismissed Heneghan and Livolsi

(DE 9; DE 11).  PMI has not filed a response brief to the motion to transfer,[1] and the motion is

ripe for ruling.  For the following reasons, NFA's motion to transfer venue will be DENIED.

*A.  Factual and Procedural Background*

Troyer, a resident of LaGrange County, Indiana, filed this suit against NFA, PMI,

Heneghan, and Livolsi on May 8, 2016, alleging various violations of the CEA.  (DE 1).  In his

complaint, Troyer alleges that he entered into a series of commodities futures trades based upon

---

[1] PMI did, however, file a Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative to
Transfer for Improper Venue (DE 16) on December 6, 2016, which is before the District Judge.

solicitations made by Heneghan.  (DE 1 ¶¶ 10-18, 24-29, 38-49).  Troyer did so by placing

checks in the mail in Indiana that were addressed to Heneghan's attention in Chicago or to

Livolsi's attention.  (DE 1 ¶¶ 12-18, 24-29, 38-49).

NFA is a national, self-regulatory organization for the U.S. derivatives industry.  (DE 4-3

¶¶ 4, 6).  NFA develops and enforces rules, and provides programs and services that safeguard

market integrity, protect investors, and help members meet their regulatory responsibilities.  (DE

4-3 ¶ 9).  NFA's membership consists of approximately 4,100 firms and 57,000 associates.  (DE

4-3 ¶ 8).  NFA's principal place of business is located in Chicago, Illinois; NFA does not

maintain any offices or document repositories in Indiana.  (DE 4-1 at 3).

NFA performs "screening checks" to determine a market participant's fitness to be an

NFA member; all NFA documents relating to such screen checks are located in Chicago.  (DE 4-

3 ¶ 11).  All of NFA's registration functions are performed in Chicago, and all documents

relating to that function are located in Chicago.  (DE 4-3 ¶ 11).  The activity of establishing and

enforcing rules and standards for customer protection is conducted either in NFA's New York or

Chicago offices.  (DE 4-3 ¶ 11).  Customer arbitrations and audit field work and surveillance to

enforce compliance with financial and other audit requirements are performed throughout the

United States, including in Indiana.  (DE 4-3 ¶ 11; DE 6 at 1).

PMI is a for-profit, Illinois corporation, and its principal place of business is located in

Illinois.  (DE 1 ¶ 5; DE 4-1 at 8).  PMI is allegedly an introducing broker registered with the

NFA until it was permanently barred from membership in February 2016.  (DE 1 ¶ 5).

Heneghan, a California resident, worked as an NFA associate member and as an associated

person for various introducing brokers registered with the NFA until being permanently barred

2

from NFA membership in March 2016. (DE 1 ¶ 6). Livolsi, a California resident, also worked

as an NFA associate member. (DE 1 ¶ 7).

*B. Legal Standard*

"For the convenience of parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been brought . .

. ." 28 U.S.C. § 1404(a). "The statutory language guides the court's evaluation of the particular

circumstances of each case and is broad enough to allow the court to take into account all factors

relevant to convenience and/or the interests of justice." *Research Automation, Inc. v.

Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). "The statute permits a

'flexible and individualized analysis' and affords district courts the opportunity to look beyond a

narrow or rigid set of considerations in their determinations." *Id*. (quoting *Stewart Org., Inc. v.

Ricoh Corp.*, 487 U.S. 22, 29 (1988)). The party moving for the transfer bears "the burden of

establishing, by reference to particular circumstances, that the transferee forum is clearly more

convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986) (citations

omitted).

"With respect to the convenience evaluation, courts generally consider the availability of

and access to witnesses, and each party's access to and distance from resources in each forum."

*Research Automation, Inc.*, 626 F.3d at 978 (citations omitted). "Other related factors include

the location of material events and the relative ease of access to sources of proof." *Id*. (citations

omitted).

"The 'interest of justice' is a separate element of the transfer analysis that relates to the

efficient administration of the court system." *Id*. (citing *Van Dusen v. Barrack*, 376 U.S. 612,

622 (1964)).  "For this element, courts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy."  *Id*. (citations omitted).  "The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result."  *Id*. (citation omitted).

*C.  Analysis*

NFA argues that the situs of material events, the convenience of the witnesses, the convenience of the parties, and the interests of justice all outweigh Troyer's choice of forum and support a transfer of this action to the Northern District of Illinois.  The Court will discuss each of these factors in turn; ultimately, the Court finds that the factors do not clearly weigh in favor of transfer.

As NFA acknowledges, a plaintiff's choice of forum generally carries substantial weight, particularly where it is the plaintiff's home forum.  *See Kamel v. Hill-Rom Co.*, 108 F.3d 799, 803 (7th Cir. 1997).  Here, Troyer's choice of forum is his home forum.

However, "[w]here the plaintiff's choice of forum is not the situs of the material events, or has a relatively weak connection to the events, plaintiff's chosen forum is entitled to less deference."  *CMG Worldwide, Inc., v. Bradford Licensing Assocs*., No. 1:05-cv-0423-DFH-TAB, 2006 WL 3248423, at *4 (S.D. Ind. Mar. 23, 2006) (collecting cases); *see also Chicago, R.I. & P.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955); *Hoover v. McDonald's Rests. of Tenn., Inc.*, 4:15-CV-033-JD, 2016 WL 922672, at *2 (N.D. Ind. Mar. 11, 2016); *Heston v. Equifax Credit Info. Servs.*, No. 03 C 2476, 2003 WL 22243986, at *1 (N.D. Ill. 2003).  NFA argues that the

situs of material events—Defendants' alleged violations of the CEA—was in Illinois and

California, not Indiana. NFA emphasizes that it does not have any employees or centers of

operation in Indiana and its employees who allegedly committed the omissions are employed in

Chicago.

But the situs of material events is not just in Illinois and California where the alleged

omissions occurred; it is also in Indiana where Troyer resides and incurred harm, purportedly

received solicitations from Heneghan, and mailed his checks to purchase the commodities. *See*

*Sojka v. DirectBuy, Inc*., No. 12 C 9809, 2014 WL 1089072, at *2 (N.D. Ill. Mar. 18, 2014)

("[T]he situs of the material events is not just . . . where DirectBuy's decisions were made, but

also where the calls and texts were received."); *see also Fed. Trade Comm'n v. Big Dog Sols.*

*LLC*, No. 16-cv-6607, 2016 WL 5391391, at *3 (N.D. Ill. Sept. 27, 2016) (stating that the situs

of material events depends upon the facts of the particular case and "can be the place where the

Defendants hatched their scheme, the place where Defendants executed their scheme, the place

where the injured parties reside, all of the above, or none of the above"). Accordingly, because

Indiana is Troyer's chosen and home forum and is also the situs of some of the material events in

this case, his choice of Indiana as the forum is entitled to substantial deference. *See Brandon*

*Apparel Grp., Inc. v. Quitman Mfg. Co.*, 42 F. Supp. 2d 821, 833-34 (N.D. Ill. 1999) (assigning

substantial deference to plaintiff's chosen and home forum where it was the situs of some of the

material events in the case); *Chem. Waste Mgmt., Inc. v. Sims*, 870 F. Supp. 870, 876 (N.D. Ill.

1994) ("[A] plaintiff's choice of forum should rarely be disturbed unless the balance weighs

strongly in the defendant's favor." (citation omitted)).

Next, NFA argues that the ease of access to sources of proof, the convenience of the

witnesses, and the convenience of the parties all weigh in favor of transferring the case to

Illinois. More particularly, NFA emphasizes that its documents and its employees are located in

Illinois at its principal place of business, and that PMI's principal office too is located in Illinois.

But "documents and records are easily transportable (and, indeed, must be copied and delivered

to the opponent no matter where the case will be litigated) and their location generally is not a

persuasive reason for transfer." *Simonoff v. Kaplan, Inc.*, No. 09 C 5017, 2010 WL 1195855, at

*2 (N.D. Ill. Mar. 17, 2010) (citation omitted). NFA and PMI can easily transport the documents

to Indiana—a neighboring district to the Northern District of Illinois—if need be. *See Brandon*

*Apparel Group, Inc.*, 42 F. Supp. 2d at 834; *Chem. Waste Mgmt., Inc.*, 870 F. Supp. at 876.

As to witnesses, "[t]he convenience of witnesses is often viewed as the most important

factor in the transfer balance." *Lewis v. Grote Indus., Inc*., 841 F. Supp. 2d 1049, 1054 (N.D. Ill.

Jan. 24, 2012) (citations omitted). But NFA has not identified any witnesses with particularity,

and "the court will not consider the convenience of unidentified witnesses." *Brandon Apparel*

*Grp., Inc*., 42 F. Supp. 2d at 834 (citation omitted). To the extent that NFA plans to call its own

employees as witnesses, "the convenience of employee-witnesses is generally assigned little

weight." *Id.* (citation omitted); *see 21 SRL v. Newegg Inc.*, No. 09-cv-6590, 2010 WL 1178066,

at *3 (N.D. Ill. Mar. 24, 2010) ("[T]he primary concern is . . . the convenience to

witnesses—non-party witnesses, in particular."). Presumably Heneghan and Livolsi will serve

as witnesses, but they will have to travel from California regardless of the forum. Therefore, the

convenience of the witnesses weighs only slightly in favor of transfer.

With respect to the convenience of the parties, "the court should consider [the parties']

respective residences and their ability to bear the expenses of litigating in a particular forum."

*Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 776 (N.D. Ill. May 4, 1998) (citation omitted). NFA

argues that Illinois is the more convenient and cost-effective forum for the parties because both

NFA and PMI have their principal places of business in Illinois. But NFA has made no showing

that transfer would do more than "merely transform[] an inconvenience for one party into an

inconvenience for the other party." *Chem. Waste Mgmt., Inc.*, 870 F. Supp. at 876 (citation

omitted); *see Research Automation, Inc.*, 626 F.3d at 978 ("Where the balance of convenience is

a close call, merely shifting convenience from one party to another is not a sufficient basis for

transfer." (collecting cases)).

NFA and PMI, as corporate entities, would likely be in a better position to bear the

expense of litigating in a foreign forum than Troyer, as an individual. *See Gen. Binding Corp. v.

Bd. Dudes, Inc.*, No. 04 C 4466, 2004 WL 2657776, at *1 (N.D. Ill. Oct. 28, 2004) (considering

"the likelihood of financial hardship to the parties" in bearing the extra costs adjudicating a case

in a foreign forum); *Hanley*, 6 F. Supp. 2d at 776 (finding that plaintiffs, as a large multi-

employer pension plan and its trustees, were in a much better position to prosecute the action in a

foreign forum than defendants, as an individual and a small, local corporation). "When plaintiff

and defendant are in different states there is no choice of forum that will avoid imposing

inconvenience; and when the inconvenience of the alternative venues is comparable there is no

basis for a change of venue; the tie is awarded to the plaintiff[.]" *Bajer Design & Mktg. v.

Whitney Design, Inc.*, No. 09 C 1815, 2009 WL 1849813, at *3 (N.D. Ill. June 26, 2009)

(alteration in original) (quoting *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 665 (7th Cir.

2003)). Therefore, because the inconvenience of Illinois and Indiana to the parties is

comparable, this factor goes to Troyer.

Turning to the interests of justice, as explained earlier, the Court must consider factors

such as docket congestion and speed to trial, each court's relative familiarity with the relevant

law, the respective desirability of resolving disputes in each locale, and the relationship of each

community to the controversy.  *See Arseneault v. AC & S Inc.*, No. 2:99-CV-76-JTM-JEM, 2016

WL 3742030, at *2 (N.D. Ind. July 13, 2016).  As to the first two factors, NFA produces Civil

Statistical Tables for the Federal Judiciary for 2015, which reflect that the median time interval

from filing to disposition for all cases in the Northern District of Indiana was 16.7 months, while

the median time in the Northern District of Illinois was just 7.7 months.  (DE 6-1).  Additionally,

NFA asserts that Chicago is recognized as one of the worldwide centers of the futures industry

and that many more cases involving commodities futures issues are filed in the Northern District

of Illinois than are filed in the Northern District of Indiana.[2]  Although the speed to trial weighs

in favor of transfer, "both venues are federal district courts applying the same federal law."

*Lewis v. Grote Indus.*, 841 F. Supp. 2d 1049, 1055 (N.D. Ill. Jan. 24, 2012).  "In such situations,

most courts have frowned on the suggestion that the judges of one district are more capable or

experienced in a particular area than are judges of another district."  *Id*.  Consequently, the Court

views the second factor as neutral.  As to the remaining factors, Indiana has an interest in

addressing the grievance of one of its residents; at the same time, NFA and PMI both have their

principal places of business in Illinois, and thus, Illinois has an interest in policing those

corporations who locate there and addressing a grievance against them.  Therefore, the

remaining factors are neutral as well.

---

[2] In support, NFA observes that a Westlaw search using the term "commodit! futures" yielded 739 hits in the Northern District of Illinois, in contrast to just 49 hits in the Northern District of Indiana.  (DE 6-2).

In sum, as explained at the outset, "a plaintiff's choice of forum should rarely be disturbed unless the balance weighs strongly in the defendant's favor." *Chem. Waste Mgmt., Inc.*, 870 F. Supp. at 876 (citation omitted)). Here, the speed to trial in the Northern District of Illinois, together with just a slightly more convenient forum for witnesses, is not enough to shift the balance so strongly in NFA's favor such that it is sufficient to overcome Troyer's chosen and home forum and the situs of some of the material events in this case. Accordingly, NFA's motion to transfer venue will be DENIED.

### D. Conclusion

For the foregoing reasons, NFA's motion to transfer venue to the Northern District of Illinois (DE 4) is DENIED.

SO ORDERED.

Entered this 22nd day of December 2016.

/s/ Susan Collins
Susan Collins,
United States Magistrate Judge