UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DENNIS TROYER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:16-cv-00146-SLC |
| ) | |
| NATIONAL FUTURES ASSOCIATION, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Before the Court is a Motion for Relief From Judgment (ECF 109) filed by Plaintiff Dennis Troyer pursuant to Federal Rule of Civil Procedure 60(b)(3), asking that the Court set aside and amend its judgment issued in Defendant National Futures Association's ("NFA") favor on September 26, 2019 (ECF 107, 108). The motion is now ripe for ruling. (ECF 110, 111). For the following reasons, Troyer's motion will be DENIED.

### A. *Legal Standard*

Rule 60(b)(3) provides that "the court may relieve a party or its legal representative from a final judgment, order, or proceedings for . . . fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party . . . ." Fed. R. Civ. P. 60(b)(3). Relief under Rule 60(b)(3) "is an 'extraordinary remedy' reserved for 'exceptional circumstances.'" *Venson v. Altamirano*, 749 F.3d 641, 651 (7th Cir. 2014) (citing *Wickens v. Shell Oil Co.*, 620 F.3d 747, 759 (7th Cir. 2010)).

To obtain relief under Rule 60(b)(3), the moving party must prove that: "(1) the party maintained a meritorious claim . . . ; and (2) because of the fraud, misrepresentation or misconduct of the adverse party; (3) the party was prevented from fully and fairly presenting its

case . . . ." *Provident Sav. Bank v. Popovich*, 71 F.3d 696, 699 (7th Cir. 1995) (citation omitted); *see also Venson*, 749 F.3d at 651. "A party seeking to set aside a judgment under Rule 60(b)(3) . . . must prove fraud by clear and convincing evidence." *Wickens*, 620 F.3d at 759 (citations omitted); *see Wine & Canvas Dev. LLC v. Muylle*, No. 1:11-cv-01598-TWP-DKL, 2015 WL 6554686, at *2 (S.D. Ind. Oct. 28, 2015) ("A party requesting relief from a final judgment is required to make a strong showing under Rule 60(b) because of the 'strong presumption against the reopening of final decision.'" (quoting *Conn. Nat'l Mortg. Co. v. Brandstatter*, 897 F.2d 883, 885 (7th Cir. 1990))).

## *B. Discussion*[1]

In connection with the cross-motions for summary judgment, NFA argued that an agreement to withdraw from NFA membership and never reapply is distinguishable from an expulsion from NFA membership, asserting that it was legally required to follow the Commodity Futures Trading Commission's decision in *Peterson v. National Futures Association*, CFTC No. CRAA-91-1, 1992 WL 289773 (Oct. 7, 1992), in that regard. (ECF 102 at 16-19). In support of that argument, NFA submitted the declaration of Daniel A. Driscoll, the Executive Vice President and Chief Operating Officer at NFA, who stated that "NFA's *disciplinary decisions* expressly distinguish between expulsion and other forms of discipline such as agreements to withdraw from and never to reapply for NFA membership." (ECF 103-19 ¶ 46 (emphasis added)).

Troyer now contends that NFA "expressly [mis]represented to this court that it drew a

---

[1] The Court presumes that the reader is familiar with the factual and procedural background of this case as set forth in the Opinion and Order dated September 26, 2019 (ECF 107 at 1-3, 5-17), and thus, it will not be repeated here.

2

clear distinction between an agreement to permanently withdraw from membership and an expulsion." (ECF 109 at 4). He states that in preparing his appeal of the judgment, his counsel discovered on NFA's website a press release from November 2006 entitled "NFA expels from membership a New York Forex Dealer Member." (ECF 109 at 4-5; ECF 109-1). In relevant part, the press release states that NFA "expelled" Spencer Financial LLC "based on charges contained in a Complaint and a settlement offer submitted by Spencer." (ECF 109-1). Troyer then compares the language used in NFA's disciplinary order in the Spencer Financial LLC case (ECF 109-2) with the language used in NFA's disciplinary order against Statewide FX, Inc. ("Statewide"), relevant to this case (ECF 107 at 20 (citing ECF 92-18 at 2)), asserting that "it is difficult to draw any material distinctions" between the two (ECF 109 at 5-6). As such, Troyer urges that the 2006 press release is clear evidence that NFA made material misrepresentations in its summary judgment documents when it stated that NFA draws a distinction between an agreement to withdraw from and never reapply for NFA membership, and an expulsion. (ECF 109 at 6).

In response, NFA asserts that the 2006 press release is not evidence that it misrepresented that its *disciplinary decisions* describe expulsions differently from agreements to withdraw. (ECF 110 at 7). What NFA seems to suggest, then, is that regardless of the language chosen for its 2006 press release, the actual language used in its disciplinary orders does distinguish between an agreement to withdraw from and never reapply for NFA membership, and an expulsion. Ultimately, Troyer does not produce evidence that convincingly undercuts NFA's explanation for the apparent discrepancy in the language used in its 2006 press release versus the language used in its disciplinary orders. For example, Troyer has not produced an actual

3

disciplinary order conflating an agreement to withdraw and never reapply for NFA membership, with an expulsion, which may be more weighty evidence in support of a Rule 60(b)(3) motion.

Furthermore, the Court concluded in the Opinion and Order that the applicable two-year statute of limitations bars all of Troyer's losses other than those incurred from 2013 to 2015, which is a finding independent of Troyer's Rule 60(b)(3) motion. (ECF 107 at 39-40). The 2006 press release significantly predates NFA's disciplinary order against Statewide in July 2011, which Troyer argued was the triggering event of NFA's purported duty to terminate Thomas Heneghan's membership. (ECF 107 at 15, 36). Given this time gap, the 2006 press release is far from strong evidence as to NFA's actions five years later which are relevant to the losses Troyer sustained from 2013 to 2015. More to the point, the 2006 press release, standing alone, does not constitute "clear and convincing evidence" necessary to grant a motion under Rule 60(b)(3). *Cf. Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir. 1995) (finding clear and convincing evidence existed to grant the plaintiff's Rule 60(b)(3) motion where she submitted with her motion an original unaltered "training schedule" to establish that the defendant had submitted a fraudulently altered "training schedule" at the deposition and at trial, and the defendant never denied the allegations of misrepresentation).

In any event, there is no evidence that NFA's purported misrepresentation "unfairly prejudiced [Troyer] by preventing him from fully and fairly presenting [his] case" on summary judgment. *Provident Sav. Bank*, 71 F.3d at 699 (second alteration in original) (citations and internal quotation marks omitted). That is, "[Troyer] must do more than argue the district court's grant of summary judgment was wrong, [he] must explain how [NFA's] conduct precluded [him] from defending against it." *Johnsson v. Steege*, No. 14 C 4858, 2015 WL

5730067, at *4 (N.D. Ill. Sept. 29, 2015) (citation omitted); *see Lonsdorf*, 47 F.3d at 897 ("A determination of whether the alleged misrepresentation altered the result of the case is unnecessary because Rule 60(b)(3) protects the fairness of the proceedings, not necessarily the correctness of the verdict." (citation omitted)).

Troyer does not dispute NFA's representation that "NFA released [the press release] publicly in 2006 and continues to make it publicly available on its website." (ECF 110 at 7 (citing https://www.nfa.futures.org/news/newsRel.asp?ArticleID=1672)). Thus, Troyer had the opportunity in his summary judgment documents to submit the 2006 press release in support of his argument that NFA does not draw a meaningful difference between an agreement to withdraw and never reapply for NFA membership, and an expulsion. *See Apex Colors, Inc. v. Chemworld Int'l Ltd., Inc.*, No. 2:14-CV-273-PRC, 2018 WL 5634232, at *6, 8 (N.D. Ind. Oct. 31, 2018) ("Rule 60(b) motions cannot be used to present evidence that with due diligence could have been introduced before judgment on the motion from which the party is seeking relief." (quoting *Rutledge v. United States*, 230 F.3d 1041, 1052 (7th Cir. 2000)). That Troyer first discovered the press release when "preparing his appeal" is attributable to his own lack of diligence, rather than any actions or inactions by NFA. (ECF 109 at 4).

In sum, because Troyer fails to establish by clear and convincing evidence that NFA made a material misrepresentation that prevented him from fully and fairly presenting his case, his Rule 60(b)(3) motion fails. The Court need not reach his remaining arguments pertaining to the first element of his Rule 60(b)(3) motion—that he presented a meritorious claim in his

summary judgment motion.[2]  (*See* ECF 109 at 7-21).

### *C. Conclusion*

For the foregoing reasons, Troyer's Motion for Relief from Judgment (ECF 109) is DENIED.

SO ORDERED.

Entered this 24th day of February 2020.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge

---

[2] The Court nevertheless observes that, for the most part, Troyer uses his argument pertaining to this first element as a means to attempt to relitigate the merits of the Court's summary judgment ruling. But "[i]n order to sustain the burden of proving fraud and misrepresentation under Rule 60(b)(3), the evidence must be clear and convincing, *and cannot serve as an attempt to relitigate the merits*." *Trammell v. Trammell*, No. 12-014-RGA, 2012 WL 1203763, at *1 (D. Del. Apr. 10, 2012) (emphasis added) (citations and internal quotation marks omitted); *see Babigian v. Ass'n of the Bar of the City of New York*, 144 F.R.D. 30, 32 (S.D.N.Y. 1992) ("[Rule 60(b)(3)] cannot be used to relitigate the merits of the case." (citation omitted)); *see generally SEC v. Bilzerian*, 815 F. Supp. 2d 324, 327 (D.D.C. 2011) ("Rule 60(b) does not allow a defeated litigant a second chance to convince the court to rule in his or her favor by presenting new explanations, legal theories, or proof." (citation omitted)).