# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

January 5, 2021

To:      Robert N. Trgovich
         UNITED STATES DISTRICT COURT
         Northern District of Indiana
         Fort Wayne , IN 46802-0000

| | |
|---|---|
| No. 20-1422 | DENNIS TROYER,<br>Plaintiff - Appellant<br><br>v.<br><br>NATIONAL FUTURES ASSOCIATION,<br>Defendant - Appellee |
| **Originating Case Information:** | |
| District Court No: 1:16-cv-00146-SLC<br>Northern District of Indiana, Fort Wayne Division<br>Magistrate Judge Susan L. Collins | |

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:          No record to be returned

**NOTE TO COUNSEL:**

If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten (10) days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

**Date:**                                    **Received by:**

_____                    _____

form name: **c7_Mandate**(form ID: **135**)

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

December 28, 2020

*Before*

JOEL M. FLAUM, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

CERTIFIED COPY

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

No. 20-1422

| | |
|---|---|
| DENNIS TROYER, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Indiana, |
| | Fort Wayne Division. |
| *v.* | No. 1:16-cv-00146 |
| NATIONAL FUTURES ASSOCIATION, | Susan L. Collins, |
| *Defendant-Appellee*. | *Magistrate Judge*. |

## O R D E R

On consideration of the petition for rehearing and petition for rehearing en banc filed by the plaintiff-appellant in the above case on December 7, 2020, no judge in active service has requested a vote thereon and all judges on the original panel have voted to deny the petition. The petition is therefore **DENIED**.

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## FINAL JUDGMENT

November 25, 2020

CERTIFIED COPY

A True Copy
Teste:

_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

Before:    JOEL M. FLAUM, Circuit Judge
           MICHAEL S. KANNE, Circuit Judge
           DAVID F. HAMILTON, Circuit Judge

|  |  |
|---|---|
| No. 20-1422 | DENNIS TROYER, <br> Plaintiff - Appellant <br><br> v. <br><br> NATIONAL FUTURES ASSOCIATION, <br> Defendant - Appellee |
| **Originating Case Information:** ||
| District Court No: 1:16-cv-00146-SLC <br> Northern District of Indiana, Fort Wayne Division <br> Magistrate Judge Susan L. Collins ||

The district court's grant of the NFA's motion for summary judgment and dismissal of Troyer's motion for summary judgment is **AFFIRMED**, with costs, in accordance with the decision of this court entered on this date.

form name: **c7_FinalJudgment**(form ID: **132**)

CERTIFIED COPY

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 20-1422

DENNIS TROYER,

*Plaintiff-Appellant,*

*v.*

NATIONAL FUTURES ASSOCIATION,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:16-cv-00146 — **Susan L. Collins**, *Magistrate Judge.*

_____

SUBMITTED OCTOBER 29, 2020[*] — DECIDED NOVEMBER 25, 2020

_____

Before FLAUM, KANNE, and HAMILTON, *Circuit Judges.*

FLAUM, *Circuit Judge.* Plaintiff-appellant Dennis Troyer brought this claim against the National Futures Association ("NFA") under Section 25(b) of the Commodities Exchange

_____

[*] We granted the parties' joint motion to waive oral argument for this case, agreeing that this appeal could be resolved on the briefs and record and that oral argument would not significantly aid the decisional process. Fed. R. App. P. 34(f).

Act. 7 U.S.C. § 25(b). On appeal, he challenges the district court's findings on each element of the action under § 25(b): failure to enforce a required bylaw, bad faith, and causation. Because this Court agrees that NFA Bylaw 301 is not applicable in this case, we affirm the district court's denial of Troyer's motion for summary judgment and grant of NFA's cross-motion for summary judgment.

## I. Background

The Commodity Futures Trading Commission ("CFTC") promotes the integrity of the U.S. derivatives markets through regulation. Through the Commodity Exchange Act ("CEA"), Congress authorized the CFTC to establish futures associations with authority to regulate the practices of its Members. As the sole CFTC-approved registered futures association under the CEA since September 1981, the NFA is charged with processing registrations for futures commission merchants, swap dealers, commodity pool operators, commodity trading advisors, introducing brokers, retail foreign exchange dealers, and relevant associated persons ("APs"). Subject to limited exceptions, entities and accompanying APs registered with the CFTC in these enumerated capacities are both required to be NFA "Members" (or "Associate Members") and are subjected to NFA requirements.

One     such     requirement—Bylaw 301(a)(ii)(D)—was adopted by the NFA to track the language of 7 U.S.C. § 21(b)(3)(C). This bylaw governs NFA membership eligibility, stating, in relevant part:

> [N]o person shall be eligible to become or remain a Member or associated with a Member who[,] … [w]hether before or after becoming a

No. 20-1422                                                 3

> Member or associated with a Member, was, by
> the person's conduct while associated with a
> Member, a cause of any suspension, expulsion
> or order[.]

NFA Bylaw 301(a)(ii)(D).

The NFA has two primary spheres of responsibility within the regulatory space: registration and discipline. Through CFTC delegation, the NFA is authorized to conduct proceedings to deny, condition, suspend, restrict, or revoke CFTC registration of any person, or entity AP, applying for registration as a covered actor. The NFA is empowered to initiate disciplinary action against any Member, or Associate Member, for violating NFA compliance rules, financial requirements, or bylaws. Disciplinary actions are resolved via settlement or evidentiary hearing followed by a written panel decision.

At the center of this dispute are the interactions between two longtime players in the NFA's regulatory space. Between 1983 and 2015, Thomas Heneghan was an AP of fourteen different NFA-Member firms. Dennis Troyer, an investor in financial products since the 1990s, invested hundreds of thousands of dollars in financial derivatives through NFA Members and their associates. Although Troyer chronicled a history of misconduct by Heneghan, dating as far back as 1985, the first interaction between Troyer and Heneghan was not until October 2008. After receiving an unsolicited phone call from Heneghan, Troyer invested more than $160,000 between October 2008 and March 2011 under Heneghan's advisement. From 2007 to 2010, Heneghan was an associate of Statewide FX, Inc. ("Statewide") before transitioning to Atlantis Trading Corp. ("ATC") from 2010 to 2012. Despite the changes in

Heneghan's entity affiliation, the terms of his working relationship with Troyer remained constant. Although Troyer did not know every detail of his investment, Heneghan placed only trades authorized by Troyer and provided regular communication to Troyer—including investment statements—about the trades made on his behalf.

During Troyer's initial investment period, Heneghan came under NFA scrutiny. In 2009, the NFA received an unauthorized trade complaint implicating Heneghan. After failing to determine who placed the trades at issue, the NFA closed the matter. The following year, on June 7, 2010, the NFA began an examination of Statewide. The examination process encompassed corporate record review, customer and employer interviews, and evaluation of many Statewide APs, including Heneghan. As the examination progressed, the NFA's Compliance Department recommended that the NFA's Business Conduct Committee initiate a disciplinary action against Statewide, its principals, and three APs. Notably, Heneghan was not one of the three named APs. On December 9, 2010, the NFA's Business Conduct Committee initiated a disciplinary action against Statewide, but at the time of initiation, a voluntary NFA membership withdrawal was already in process by Statewide.

Amid the Statewide investigation, Heneghan transferred his registration to ATC. Tracking the personnel movement from Statewide to ATC, the NFA took note that several APs, including Heneghan, had previously worked for disciplined firms. As part of the NFA's inquiry, Troyer gave feedback that "overall his experience with Heneghan had been very good, even though his account was down in value." This 2011 examination culminated in NFA findings that, while 95% of

No. 20-1422                                                5

ATC customers lost money in 2010, there had been significant improvement in investment outcomes and commission-to-equity and break-even ratios between 2010 and 2011. This examination and related findings resulted in the NFA's decision to place ATC on investigative monitoring.

By July 28, 2011, a settlement was reached in the Statewide NFA complaint. The settlement order called for Statewide "never to reapply for NFA membership or act as a principal of an NFA Member, effective immediately." Because Heneghan was not named in the NFA's 2010 disciplinary action, this settlement had no impact on his membership personally.

Although the NFA's Compliance Department did impose an approval hold on Heneghan beginning June 15, 2012, this hold was lifted only four months later. Heneghan was again approved to operate as an AP, this time with Portfolio Managers, Inc. ("PMI").

While Heneghan was registered as an associate of PMI, Troyer began sending money to Heneghan personally in April 2013, allegedly to take advantage of trading firm employee discounts. Between April 2013 and April 2015, these back-channel investments written to Heneghan personally (and delivered to his home) totaled approximately $82,000. In contrast to the monthly account statements he received during his first investment period, Troyer neither received nor asked for any investment documentation during his second investment period.

Again, NFA scrutiny followed Heneghan to his new role at PMI. On November 10, 2014 and September 8, 2015, the NFA's Compliance Department initiated examinations of

PMI. Despite Troyer's alleged substantial investment, no accounts were listed with PMI for either Troyer or Heneghan at that time. On December 21, 2015, the NFA issued a complaint against PMI, Heneghan, and others, alleging routine use of high-pressure sales tactics and materially misleading and deceptive statements during customer sales solicitations.

Although Troyer was comfortable during his initial investment period not knowing every detail of his investments with Heneghan, his comfort waned toward the end of his second investment period. During the summer of 2015, Heneghan boasted to Troyer the account had increased to about $525,000. When Troyer directed Heneghan to cash out the fund and return the increased investment to him, "all hell broke loose."

By February 26, 2016, the NFA resolved the PMI complaint by issuing a decision to permanently bar Heneghan from NFA membership, associate membership, and from acting as a principal of an NFA Member. On May 8, 2016, in the wake of the collapse of Troyer and Heneghan's relationship, Troyer filed a four-count complaint in the Northern District of Indiana against several parties seeking accountability for Heneghan's allegedly fraudulent solicitation of funds from Troyer for the purpose of purchasing commodities futures.[1] On appeal, the NFA is the sole remaining defendant.

---

[1] In the initial complaint, Troyer alleged that Heneghan and Olivier Livolsi, another NFA Associate Member, violated the CEA (Counts I and II) and that PMI and the NFA should be held vicariously liable for those violations (Count III). He also alleged that the NFA failed to enforce the CEA (Count IV). The district court granted Troyer's motion to dismiss the claims against Heneghan and Livolsi without prejudice. Troyer then filed

After being given the opportunity replead his claims against the NFA, Troyer filed the operative second amended complaint against the NFA.[2] Following the district court's denial of his motion for relief from judgement under FRCP 60(b)(3), Troyer now appeals the district court's grant of summary judgment to the NFA and corresponding denial of summary judgment for Troyer on his claim arising under 7 U.S.C. § 25(b) for failure to enforce NFA Bylaw 301.

## II. Discussion

We review a district court's summary judgment ruling de novo and consider the facts and draw all inferences in the light most favorable to the nonmoving party. *Wigod v. Chi. Mercantile Exch.*, 981 F.2d 1510, 1514 (7th Cir. 1992). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

At this stage in Troyer's litigation, the only surviving claim for appeal centers on the NFA's alleged violation of the CEA through its failure to enforce its own bylaws, specifically NFA

---

an amended complaint against the NFA and PMI, to which the NFA responded with a motion to dismiss for failure to state a claim. Troyer subsequently moved to dismiss PMI with prejudice after reaching a settlement, leaving the NFA as the sole remaining defendant.

[2] In his second amended complaint, Troyer alleged that the NFA failed to enforce the CEA (Count I) and that the NFA was vicariously liable for Heneghan's CEA violations (Count II). The court granted the NFA's motion to dismiss Troyer's Count II, but denied the NFA's motion to dismiss Troyer's Count I. Troyer then moved for summary judgement on the remaining claim, and the NFA filed a corresponding cross-motion for summary judgment. The district court granted summary judgment to the NFA.

Bylaw 301(a)(ii)(D). To hold a party liable under the CEA for actual damages sustained by one engaged in futures transactions, three elements must be shown: failure to enforce a required bylaw, bad faith, and causation. 7 U.S.C § 25(b)(2), (4). First, the NFA must have "fail[ed] to enforce [a] bylaw or rule that is required under section 21 of [the CEA]." *Id.* § 25(b)(2). Second, the NFA must have "acted in bad faith in failing to take action or in taking such action as was taken." *Id.* § 25(b)(4). Third, the NFA's "failure or action [must have] caused the loss." *Id.* Troyer appeals the district court's findings on each prong.

Our analysis begins and ends with prong one: whether the NFA failed to enforce NFA Bylaw 301(a)(ii)(D) by not disqualifying Heneghan from continued registration as an NFA Associate Member and as an AP of any NFA-Member firm. Bylaw 301(a)(ii)(D) bars persons from becoming or remaining NFA Members or Associated Members if their conduct was the cause of NFA expulsion. If "expulsion" excludes voluntary withdrawal under a settlement, the bylaw is inapplicable, and Troyer's CEA violation claim fails at the outset.

Alleging Heneghan was "a cause of" the "expulsion" of Statewide, Troyer claims that the NFA was required to immediately terminate Heneghan's membership as of July 28, 2011, the date of the Statewide settlement. Troyer thus contests the district court's and the CFTC's position that Statewide's agreement not to reapply represented a distinct sanction from expulsion, one that does not trigger Bylaw 301(a)(ii)(D). To support his argument that the definition of expulsion encompasses an agreement not to reapply, Troyer attempts to distinguish the CFTC ruling in Peterson v. National Futures Association, CFTC No. CRAA-91-1, 1992 WL 289773 (Oct. 7, 1992)

No. 20-1422                                                    9

[hereinafter *Peterson*], while reframing the CFTC's 1996 Inter-pretative Statement, 17 C.F.R. pt. 3, app. A (2013) [hereinafter Interpretative Statement] and the related Amendment to In-terpretative Statement Regarding Statutory Disqualification from Registration, 61 Fed. Reg. 58627-01 (Nov. 18, 1996) (cod-ified at 17 C.F.R. pt. 3, app. A).

Both *Peterson* and the Interpretative Statement center on 7 U.S.C. § 12a(3)(J) and (M), which authorize the CFTC to re-fuse to register, or conditionally register, any person upon a finding after opportunity for hearing that:

> (J) such person is subject to an outstanding or-der denying, suspending, or expelling such per-son from membership in a registered entity, a registered futures association, any other self-regulatory organization, or any foreign regula-tory body that the [CFTC] recognizes as having a comparable regulatory program or barring or suspending such person from being associated with any member or members of such regis-tered entity, association, self-regulatory organi-zation, or foreign regulatory body; [or]
>
> …
>
> (M) there is other good cause[.]

*Id.* § 12a(3)(J), (M).

In *Peterson*, the NFA denied Leslie Peterson's application for CFTC registration as an AP on account of a past settlement agreement to withdraw and never reapply to the New York Mercantile Exchange, an exchange and self-regulatory organ-ization. 1992 WL 289773, at *1. The CFTC vacated the NFA's decision and remanded for further proceedings, rejecting the

argument that an agreement to permanently bar falls within either § 12a(3)(J) or § 12a(3)(M).[3] *Id.* at *3. Through this holding, the CFTC clarified that a withdrawal combined with agreement never to reapply is not an order of expulsion, nor does it, standing alone, constitute other good cause for statutory disqualification. *Id.* at *3.

On appeal, Troyer attempts—unpersuasively—to distinguish *Peterson* from the facts at hand. First, Troyer attempts to frame the holding of *Peterson* in an advantageous light by arguing the resulting rule is "not … that NFA could never treat an agreement to withdraw from NFA membership as an expulsion under Section [12]a(3)(J)" but instead that "a settlement to withdraw from membership in an exchange, in and of itself, will not suffice as 'good cause' under Section [12]a(3)(M)." Next, Troyer claims the facts contained within the order accepting Statewide's settlement offer provide the admission of wrongdoing missing for the establishment of good cause in *Peterson*.

Undeterred by a possible rejection of his interpretation of *Peterson*, Troyer next points to the Interpretative Statement. These CFTC amendments to Title 17 of the Code of Federal Regulations included changes to Chapter 1, Appendix A to Part 3, regarding § 12a(3)(J) and (M). The Interpretative Statement clarifies that § 12a(2), (3), and (4) of the CEA "establish a system of statutory disqualifications pursuant to which the Commission may find an applicant or registrant unfit for registration and vest the Commission with wide discretion to deny, condition, suspend, restrict or revoke the registration of

---

[3] In prior versions of the code, 7 U.S.C. § 12a was known as 7 U.S.C. § 8a. Statutory references have been changed to § 12a for consistency.

No. 20-1422                                                 11

any person subject to one or more of the disqualifications set forth therein." 17 C.F.R. pt. 3, app. A. As part of a discussion regarding the attempt to reapply following a settlement agreement to not reapply, language in the Interpretative Statement directly references § 12a(3)(M)'s "other good cause" clause:

> [T]he [CFTC] interprets [§ 12a(3)(M)] to author-ize the [CFTC] to refuse to register, register con-ditionally or otherwise affect the registration of any person if such person has consented, in con-nection with an agreement of settlement with a contract market, a registered futures associa-tion, or any other self-regulatory organization, to comply with an undertaking to withdraw all forms of existing or pending registration and/or not to apply for registration with the [NFA] or the [CFTC] in any capacity. Such person's effort to violate his or her prior undertaking to with-draw from and/or not to apply for registration shall be considered to constitute "other good cause" under paragraph (M). The [CFTC] be-lieves that allowing such a person to be regis-tered would be inappropriate and inconsistent with the intention of parties to the prior settle-ment agreement. The failure to withdraw or the attempt to register in the face of such an under-taking would indicate the lack of fair and honest dealing which the [CFTC] believes constitutes "other good cause" for denying, revoking or conditioning registration under the Act.

12                                              No. 20-1422

17 C.F.R. pt. 3, app. A. Pertinent to Troyer's argument on ap-
peal, the relevant portion of the Interpretative Statement con-
tinues, extending its discussion of violations of past agree-
ments to withdraw and never reapply to the applicability of
§ 12a(3)(J):

> The [CFTC] also believes that allowing registra-
> tion *in such a situation* would be inconsistent
> with … Section [12]a(3)(J), which authorizes the
> Commission to refuse to register or to register
> conditionally any person if he or she is subject
> to an outstanding order denying, suspending,
> or expelling such person from membership in a
> contract market, a registered futures associa-
> tion, or any other self-regulatory organization.

17 C.F.R. pt. 3, app. A. (emphasis added).

Troyer takes the stance on appeal that the district court
took an impermissibly limited view of the Interpretative
Statement. Although the district court rejected Troyer's claim
that the Interpretative Statement effectively reversed *Peter-
son*'s holding, he nonetheless argues that the Interpretative
Statement stands for the proposition that an agreement to
never reapply for NFA membership alone, without an at-
tempt to renege on that agreement, triggers the NFA's duty to
enforce Bylaw 301(a)(ii)(D).

Troyer's creative reading of the Interpretative Statement is
not convincing. Plain reading of the text of the interpretative
statement indicates that the paragraph in question, referenc-
ing both § 12a(3)(M) and (J), intends to provide guidance on
registration of applicants who apply despite having previ-

No. 20-1422                                                      13

ously "consented, in connection with an agreement of settle-
ment … to comply with an undertaking to withdraw … reg-
istration and/or not apply for registration." 17 C.F.R. pt. 3,
app. A. Troyer concedes that the reference to § 12a(3)(M) in
the Interpretative Statement does specifically address the sit-
uation of an agreement to withdraw and never reapply fol-
lowed by an attempt to renege, but he alleges the reference to
§ 12a(3)(J) is not so constrained. In forming his conclusion
about § 12a(3)(J)'s broad applicability, Troyer ignores the fact
that these references are discussed in the same paragraph and
glosses over the fact that § 12a(3)(J) applicability is clearly lim-
ited by the linking language, "in such a situation." 17 C.F.R.
pt. 3, app. A. Having just discussed an applicant attempting
to register in violation of a past agreement not to reapply, the
referenced "situation" is quite clear.

We therefore affirm the district court's holding that the
NFA did not fail to enforce Bylaw 301(a)(ii)(D) because the
NFA did not "expel" Statewide. Through *Peterson*, the CFTC
firmly established that an "agreement not to reapply" is not
an "expulsion." 1992 WL 289773. Because Bylaw 301(a)(ii)(D)
is triggered only by a suspension, expulsion, or order,
Troyer's claim that factual contents within the order accepting
Statewide's settlement offer almost certainly establish good
cause is irrelevant. Troyer's textual argument rooted in the
1996 Interpretative Statement is not persuasive, and therefore
we see no reason to deviate from the district court's logic.

A successful claim under Section 25(b) of the CEA requires
failure to enforce a required bylaw, bad faith, *and* causation.
7 U.S.C. § 25(b). In sum, because Troyer cannot satisfy even
the first prong of a claim under § 25(b) of the CEA, his claim
fails, and our analysis appropriately ends here.

14                                    No. 20-1422

### III. Conclusion

For the reasons explained above, we AFFIRM the district court's grant of the NFA's motion for summary judgment and dismissal of Troyer's motion for summary judgment.